**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **L.A. JEFFERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No: 09 C 7536** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, L.A. Jefferson, seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, arguing that the Commissioner's position in denying his application for Disability Insurance Benefits and Supplemental Security Income was not substantially justified. He asks for an award of $5,261.25. For the following reasons, the petition is granted.

The EAJA provides that a district court may award attorney's fees where (1) the plaintiff is a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Costs are available under 28 U.S.C. § 2412(a)(1). Here, by virtue of the remand of his case, the plaintiff is the prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). There are no "special circumstances" alleged. *See Golembiewski*, 382 F.3d at 724; *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). The plaintiff's application was timely filed and is supported by an

itemized statement. As to the final point – whether the government's position was substantially justified – the Commissioner bears the burden of proof. *Scarborough v. Principi* 541 U.S. 401, 416 (2004); *Golembiewski*, 382 F.3d at 724.

The Commissioner advances the following theory to show that the government's position was substantially justified: "the Court rejected all but one of Plaintiff's arguments, and sided with the Commissioner on all but one minor point. Thus, the government's position was substantially justified." (*Defendant's Response*, at 2). The argument is mistaken. The court did not reject all but one of plaintiff's arguments. It simply focused on one that required a remand, eschewing a lengthy discussion of the others:

> Mr. Jefferson cites several problems with the ALJ's opinion, but this review will focus on one that requires a remand: the ALJ's treatment – or lack thereof – of the medical opinions of an examining and treating physician.

(Dkt. #26, at 13-14). If the Commissioner misinterpreted this as meaning that only one of plaintiff's arguments was meritorious, he shouldn't have. A few pages later, the opinion goes on to briefly mention a few other valid arguments the plaintiff made as well, dealing with the ALJ's mischaracterization of some evidence. (Dkt. #26, at 16-17).

If one argument necessitates a remand, it is completely unnecessary to go into depth on every other argument the plaintiff advances. The Seventh Circuit often employs this approach in ruling on cases before it. *See e.g., Smith v. Astrue,* 2012 WL 767798, 4 (7th Cir. 2012); *United States v. Pillado,* 656 F.3d 754, 768 (7th Cir. 2011); *United States v. Jones*, 635 F.3d 909, 913 (7th Cir. 2011). There is a never-ending queue of disability

benefits cases in this court that is growing substantially as unemployment increases.[1] Putting together a scorecard on how many arguments were good and how many weren't in cases where a remand is necessary anyway would just bog down the review process. Simply put, this was not a case like *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009), where the Seventh Circuit said that "a party's success on a single claim will rarely be dispositive of whether the government's overall position was substantially justified." 561 F.3d at 683. This isn't a case where the plaintiff lobbed a bunch of arguments against the wall and got only one to stick. It's a case where one stuck, so there was no need to see how many others did.

Moreover, the argument the opinion focused on was not a "minor point." As the Commissioner concedes, the ALJ ignored the opinion of a treating physician – Dr. Sapkota – and ignored a significant portion of the opinion of a consultative physician – Dr. Johnson. Dr. Sapkota reported that Mr. Jefferson's ability to walk was reduced by more than 50%; his ability to sit, bend, stoop, climb, push, and pull was reduced by up to 20%, and his ability to stand was normal. (R. 409). He could lift no more than ten pounds at a time. (R. 409). Dr. Johnson noted multiple scars on Mr. Jefferson's left knee from a chainsaw accident, and that Mr. Jefferson had pain and crepitus on range of motion, which was significantly limited. Tinel's sign was strongly positive bilaterally for

---

[1] From 1970 to 2003, the rate of applications for disability insurance benefits have essentially tracked the unemployment rate. http://www.ssa.gov/policy/docs/chartbooks/disability_trends/sect05.html. The application rate matched the unemployment rate in 1982 and 1983, but otherwise, it ranged from about 3% above the unemployment rate to 8% above; currently, unemployment is approaching 10%. In 2010, there were 3.5 million applications for benefits filed. That represented a 40% increase over the 2.5 million in pre-recession 2006. http://www.dailyfinance.com/2011/04/01/is-disability-insurance-the-post-unemployment-check-not-for-man/. The increase was far more substantial in federal district court. In the Northern District of Illinois, there was an 87% increase in disability-related Social Security cases from 2006 (100) to 2010 (187). http://www.uscourts.gov/Statistics/JudicialBusiness/JudicialBusiness2006.aspx.; 2010.aspx

irritated nerves. He exhibited manipulation problems: he couldn't pick up a button or a coin, and had trouble zipping a zipper. (R. 165). According to a dynamometer measurement, pinch and grip strength was reduced. (R. 168). Dr. Johnson felt that Mr. Jefferson would be unable to stand or walk for long periods, and would have significant problems with his hands. (R. 166).

Without considering that evidence, the ALJ determined that Mr. Jefferson could perform simple, repetitive, and unskilled light work if it required no more than occasional climbing of ramps and stairs – but no climbing of ropes, ladders, or scaffolds – and no more than occasional balancing, stooping, kneeling, and crawling. The ALJ also concluded that Mr. Jefferson retained the ability to frequently handle and finger objects. (R. 32).

Under the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b). Evidence that a claimant cannot lift more than ten pounds would tend to prove that claimant could not perform light work. There is light work that requires little lifting, but these jobs generally require a "good deal of walking or standing." 20 C.F.R. §§ 404.1567(b); 416.967(b). Evidence that a claimant had significant limitations on his ability to walk and/or stand would certainly tend to undermine a finding that he could do such work. Light work may or may not require the frequent handling and fingering of objects, but the ALJ clearly made that a part of the RFC finding. And so, evidence regarding an inability to zip a zipper, pick up a button, and reduced dynamometer readings would tend to undermine that finding.

4

Contrary to the Commissioner's argument, the omission of the opinions of Drs. Sapkota and Johnson does not seem to be "a minor point" in this context. All the foregoing findings that ignored the doctors' opinions went into the ALJ's hypothetical to the vocational expert, whose testimony then provided support for the conclusion that Mr. Jefferson could perform work that existed in significant numbers in the economy. Perhaps Mr. Jefferson could be an usher, a clerk, or a host, with the additional limitations Drs. Sapotka and Johnson found that he had. But the vocational expert cited those jobs in response to a hypothetical that failed to take those physicians' findings into account.

The ALJ didn't have to accept the two physicians' opinions, of course, but she couldn't simply ignore them. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir.2009). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *White v. Barnhart,* 415 F.3d 654, 658 (7th Cir.2005). But, as the memorandum order pointed out, the ALJ had to give reasons, supported by the record, for why she didn't assign any weight to the doctors' opinions. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ didn't provide any reasoning; she simply chose to dismiss the opinions out of hand.

The Commissioner argues that there is substantial evidence in the record to support the ALJ's decision, and cites some examples. (*Defendants' Response*, at 3). But those examples are citations from the record, including reports from two doctors – Chan

5

and Smalley – are not from the ALJ's opinion. In other words, the Commissioner isn't arguing that the ALJ relied on them to reach her conclusion, just that this evidence would have supported that conclusion if she had. But, as was noted in the memorandum order, it is the ALJ's analysis that is up for review, not the analysis of the Commissioner's attorneys. (Dkt. #26, at 15). To argue otherwise is a violation of the principle announced in *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943), as the Seventh Circuit has repeatedly admonished. *See, e.g., Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010); *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010).

So the question becomes whether these failings render the government's position not substantially justified. It might be argued that this was simply a case where the ALJ failed to build an accurate and logical bridge between the evidence and his conclusions. The Seventh Circuit has said that "it typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified—something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis." *Bassett v. Astrue*, 641 F.3d 857, 859-60 (7th Cir. 2011).

The ALJ in this case did ignore two doctors' opinions that would have undermined a conclusion that Mr. Jefferson could perform light work. She also mischaracterized some evidence. And, by citing medical evidence that the ALJ did not use to bolster her conclusion, the Commissioner ran afoul of the *Chenery* principle. Accordingly, it must be said that the Commissioner failed to carry his burden of demonstrating the government's position was substantially justified, and an award of

6

EAJA fees is appropriate. *See, e.g., Santoro v. Astrue*, 2011 WL 1672038, *3 (N.D.Ill. 2011)(EAJA award where "the ALJ failed to address, much less weigh, significant evidence from a treating physician, including evidence that did not support his ultimate conclusion."); *Strocchia v. Astrue,* 2010 WL 5367634, at *2 (N.D.Ill. 2010) (award of EAJA where ALJ failed to "to state why a treating physician's opinion is not given controlling weight is well-established.").

The Commissioner has no objection to the amount of fees sought, but does object to those fees being paid directly to Mr. Jefferson's attorney, citing the Supreme Court's decision in *Astrue v. Ratliff*, – U.S. –, 130 S.Ct. 2521 (2010). There, the Court held that EAJA fees belong to a party rather than a party's attorney. That's true as far as it goes, but in this case, Mr. Jefferson has assigned any recovery of EAJA fees to his lawyer by contract. (*Motion For Attorney Fees*, attached Representation Agreement). Recently – indeed, a few days after the Commissioner filed his response to the EAJA petition – the Seventh Circuit spoke on just this situation in light of *Ratliff*:

> The plaintiff in this case had assigned her claim to a fee award to her lawyer in advance, and, so far as appears, that was not the case in *Ratliff,* where the government wanted to deduct from the fee award a debt she owed. Some language in the Supreme Court's opinion suggests that assignment would make no difference: "The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the fees directly to the attorney." *Id.* at 2526. But elsewhere the opinion notes that the government "often paid EAJA fees directly to attorneys in cases in which the prevailing party had assigned its rights in the fees award to the attorney (which assignment would not be necessary if the statute rendered the fees award payable to the attorney in the first instance) ..., [though it] has since continued the direct payment practice only in cases where 'the plaintiff does not owe a debt to the government *and assigns the right to receive the fees to the attorney.*' " *Id.* at 2529. The language we've italicized suggests that if there is an assignment, the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her

7

> lawyer. There is no indication of that in this case, so to ignore the assignment and order the fee paid to her would just create a potential collection problem for the lawyer.

*Mathews-Sheets v. Astrue*, 2011 WL 3437029, *5 (7th Cir. 2011). Here, too, there is no indication that Mr. Jefferson has a debt to the United States government. The Commissioner seems to demand proof of this from Mr. Jefferson (*Defendant's Response*, at 4), but the wording in *Mathews-Sheets* suggests that burden is on the government. Accordingly, fees will go directly to Mr. Jefferson's counsel as provided in the agreement between the two.

## CONCLUSION

The plaintiff's motion for attorney fees [#29] is GRANTED, and fees in the amount of $5,261.25 are awarded and are to be paid directly to plaintiff's counsel.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/5/12